IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Teresa L. Gilstrap, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 3:07-3660-HMH-JRM |
| | ) | |
| vs. | ) | **OPINION & ORDER** |
| | ) | |
| Michael J. Astrue, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for review of the Report and Recommendation of United States Magistrate Judge Joseph R. McCrorey, made in accordance with 28 U.S.C. § 636(b)(1) (2006) and Local Civil Rule 73.02 for the District of South Carolina.[1]

Teresa L. Gilstrap ("Gilstrap") seeks judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits ("DIB") under Title II of the Social Security Act. In his Report and Recommendation, Magistrate Judge McCrorey recommends affirming the Commissioner's decision. Gilstrap objects to the Report and Recommendation. For the reasons stated below, the court adopts the Magistrate Judge's Report and Recommendation and affirms the Commissioner's decision.

---

[1] The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1) (2006).

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts are fully set forth in the decision of the administrative law judge ("ALJ"), (R. at 12-20.) and summarized as follows. At the time of the ALJ's decision on May 12, 2007, Gilstrap was a thirty-seven-year-old woman with a high school education. (R. at 145.) Gilstrap alleges that she has been disabled since January 2, 1995, due to Obsessive-Compulsive Disorder ("OCD"). (Id. at 12.) Gilstrap's earning records show that she has acquired sufficient quarters of coverage to remain insured through December 31, 1999. Accordingly, Gilstrap must establish disability on or before December 31, 1999, in order to be entitled to a period of disability and DIB. (Id.)

Dr. Boyce Tollison ("Dr. Tollison") began treating Gilstrap on November 5, 1999. (Id. at 16.) Gilstrap complained of OCD and depression. Dr. Tollison prescribed Zoloft and opined that Gilstrap may need counseling. By December 3, 1999, however, Dr. Tollison wrote that Gilstrap was responding fairly well on the medication and he increased her Zoloft dosage. (Id.) On February 2, 2000, Dr. Tollison noted that generally Gilstrap "had been doing excellently." (R. at 118.) On April 3, 2000, Dr. Tollison noted that Gilstrap was functioning much better, feeling much better, and dealing better with life in general. (Id. at 117.) Gilstrap did not seek treatment from Dr. Tollison again until March 2001 at which time Dr. Tollison noted that he did not need to adjust her dosage of Zoloft because Gilstrap was functioning well. (Id. at 16.)

In January 2003, Dr. Tollison refilled Gilstrap's Zoloft medication and indicated that she was doing well and tolerating Zoloft without significant problems. (Id.) Dr. Tollison also acknowledged that Gilstrap was controlling and managing her behavior and symptoms better.

Gilstrap did not return to Dr. Tollison until December 30, 2003.  During the December 2003 visit, Dr. Tollison noted that Gilstrap was functioning fairly well and her depression had decreased.  Gilstrap stated that she had experienced a fairly good year, with no significant problems.  (Id.)   One year later, on December 28, 2004, Dr. Tollison noted that Gilstrap's depression was "doing much better."  (R. at 110.)

On December 22, 2005, Gilstrap complained of ongoing problems with fatigue, depression, and OCD.  (Id. at 17.)  She told Dr. Tollison that she had to plan her day and rest before her children came home from school in order to function.  (Id.)  Dr. Tollison increased Gilstrap's Zoloft dosage noting that the medication had helped her in the past.(Id.)  On March 21, 2006, Gilstrap complained that Zoloft had adverse side effects.  (Id.)  In response, Dr. Tollison discontinued the use of Zoloft and prescribed Cymbalta and Klonopin.  Dr. Tollison also completed a medical assessment of Gilstrap's ability to perform  work-related mental activities where he opined that Gilstrap had "poor or no ability to relate to co-workers; deal with the public; deal with work stresses; function independently; and maintain attention and concentration."  (R. at 17.)  Dr. Tollison stated that OCD was Gilstrap's primary limiting problem because it caused her inability to focus and function.

On April 18, 2006, Gilstrap reported that her depression had improved with the new medication and that she had more energy which allowed her to participate in more activities. (Id.)  In May 2006, Dr. Tollison completed a questionnaire from Gilstrap's attorney in which he indicated that the limitations set forth in his March 2006 medical assessment regarding Gilstrap's inabilities had been present since November 1999, and as such, Gilstrap had been unable to engage in substantial, gainful employment on a regular basis since November 1999.

On September 28, 2004, Gilstrap filed an application for DIB, alleging a disability onset date of January 2, 1995. (Id. at 12.) Gilstrap's claim was denied initially and upon reconsideration. The ALJ issued a decision denying benefits on May 12, 2007. The Appeals Council denied Gilstrap's request for review on September 27, 2007. Gilstrap then filed the instant suit on November 8, 2007.

## II. REPORT AND RECOMMENDATION

In her brief to the magistrate judge, Gilstrap argued that the ALJ erred in the following ways: (1) the ALJ failed to assign great weight to the opinion of Gilstrap's treating physician, Dr. Tollison, that Gilstrap was disabled; and (2) the ALJ incorrectly determined that Gilstrap did not suffer from a severe impairment. (Pl.'s Br. 6, 8.)

The magistrate judge found that the ALJ's decision was supported by substantial evidence and that the ALJ had not erred on either of Gilstrap's two grounds. Accordingly, the magistrate judge recommended affirming the Commissioner's decision to deny Gilstrap benefits. (Report and Recommendation 13.)

## III. DISCUSSION OF THE LAW

### A. Standard of Review

Under 42 U.S.C. § 405(g), the court may only review whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). Accordingly, the court "must uphold the factual findings of the [Commissioner only] if they are supported by substantial evidence and

were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (citations omitted). Hence, if the Commissioner's findings are supported by substantial evidence, the court should uphold the Commissioner's findings even if the court disagrees with it. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

### B. Objections

First, Gilstrap objects to the magistrate judge's conclusion that the ALJ acted properly in rejecting Dr. Tollison's opinion that Gilstrap was disabled. (Objections 1.) Second, Gilstrap objects to the magistrate judge's finding that the ALJ properly concluded that Gilstrap did not suffer from a severe impairment. (Id. at 2.)

### 1. Treating Physician

The ALJ must give controlling weight to a treating physician's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.927(d)-(e)(1) (2006). If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and consistent] with the other substantial evidence in the record . . . [it is not] entitled to 'controlling weight.'" Pittman v. Massanari, 141 F. Supp. 2d 601, 608 (4th Cir. 2001).

In May 2006, Dr. Tollison completed a questionnaire from Gilstrap's attorney indicating that OCD limited Gilstrap's ability to focus and function and that this limitation had been present since November 1999.  Thus, according to Dr. Tollison's May 2006 assessment, Gilstrap had been unable to work since November 1999.  The ALJ did not give Dr. Tollison's opinion controlling weight because (1) Dr. Tollison is not a specialist in mental health issues, and (2) Dr. Tollison's office notes do not support the opinion that Gilstrap was non-functional and unable to work prior to her date last insured, December 31, 1999. (R. at 20.)  Furthermore, Dr. Tollison's conclusion was not supported by objective evidence such as Gilstrap's day-to-day activities:  planting flowers, shopping, housework, taking her to children to school, going out to eat, attending church, working within the church, and using a cell phone.  (Id. at 19.)

The court finds that substantial evidence supports the ALJ's decision not to give Dr. Tollison's retroactive conclusion regarding Gilstrap's capabilities in 1999 controlling weight.  As the ALJ noted, Gilstrap did not begin to seek medical assistance for OCD until November 1999.  (Id.)   According to Dr. Tollison's treatment notes, Gilstrap responded well to the use of medication and was "doing excellently" by February 2000.  (Id. at 118.)   Dr. Tollison did not indicate that Gilstrap stopped responding to Zoloft until December 2005 when Gilstrap complained of increased symptoms.  (Id. at 20.)  Gilstrap, however, had not been examined for her mental problems since December 2003, at which time she reported having had a fairly good year without any significant problems. (R. at 19.)

Given that Dr. Tollison's treatment notes indicate steady improvement in Gilstrap's ability to function, the ALJ reasonably determined that Dr. Tollison's 2006 retroactive

6

assessment of Gilstrap's capabilities in 1999 were not supported by the evidence.  See Craig, 76 F.3d at 590 (upholding an ALJ's rejection of a physician's opinion because it was inconsistent with the physician's treatment notes).  Based on the foregoing, Gilstrap's objection that the ALJ improperly rejected Dr. Tollison's opinion that Gilstrap was disabled is without merit.

## 2.  Severe Impairment

Second, Gilstrap objects to the magistrate judge's finding that the ALJ properly concluded that she did not suffer from a severe impairment.  It is the claimant's burden to prove that he or she suffers from a medically severe impairment.  Bowen v. Yuckert, 482 U.S. 137, 145 n.5 (1987).  A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
>
> (6) Dealing with changes in a routine work setting

20 C.F.R. § 404.1521(b).  A severe impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical

evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R.§ 404.1508.  A claimant's own description of her physical or mental impairment is not enough to establish that there is, in fact, a physical or mental impairment.  20 C.F.R. § 404.1528.

The ALJ's determination that Gilstrap did not have any severe impairments on or before her last date insured, December 31, 1999, is supported by substantial evidence.  First, the ALJ noted that during her first visits with Dr. Tollison, it became evident from Dr. Tollison's notes and Gilstrap's comments that Gilstrap functioned well with the medication.  "If a symptom can be reasonably controlled by medication or treatment, it is not disabling."  Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986).

Second, the ALJ concluded that the claimant's statements concerning the intensity, persistence and limiting effects of her symptoms were "not entirely credible."  (R. at 19.) Gilstrap alleges that she has suffered from a severe impairment since January 1995, yet she never sought medical treatment until November 1999.  An "unexplained inconsistency between [a] claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility."  Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994).

Following her visit with Dr. Tollison in March 2001, Gilstrap did not seek treatment for her mental impairments again until January 2003.  During the January 2003 visit with Dr. Tollison, Dr. Tollison noted that Gilstrap continued to have episodes at times of obsessive

feelings but "is able to control that and manage it at this point . . . otherwise she denies any other problems. She apparently has done well. She felt well." (R. at 112.) In order to be disabled under the Social Security Act, one must be unable to "'engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months.'" Craig, 76 F.3d at 592.

Lastly, as discussed above, Gilstrap is able to perform basic functions on a day-to-day basis. She helps with children's groups at church, serves snacks to the children at church, shops for groceries, drives her children to and from school, and performs housework. (R. at 158.) Further, she is able to take care of her home and help others at church. Id. Accordingly, the ALJ's decision that Gilstrap did not suffer from a severe impairment that would significantly limit her ability to perform basic work activities prior to December 31, 1999, is supported by substantial evidence. Based on the foregoing, the court adopts Magistrate Judge McCrorey's Report and Recommendation affirming the Commissioner's decision.

It is therefore

**ORDERED** that the Commissioner's decision to deny Gilstrap benefits is affirmed.

**IT IS SO ORDERED**.

s/Henry M. Herlong, Jr.
United States District Judge

Greenville, South Carolina
October 16, 2008